UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE


| | |
|---|---|
| JIMMIE D. GREEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 3:09-CV-331 |
| ) | (PHILLIPS/SHIRLEY) |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## **REPORT AND RECOMMENDATION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Court of Plaintiff's Motion for Judgment on the Pleadings [Doc. 9] and Defendant's Motion for Summary Judgment [Doc. 17]. Plaintiff Jimmie D. Green ("Plaintiff") seeks judicial review of the decision of Administrative Law Judge ("ALJ") George L. Evans, III, denying him benefits, which was the final decision of Defendant Michael J. Astrue, Commissioner of Social Security ("the Commissioner").

On July 15, 2004, Plaintiff filed applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). [Tr. 13]. On both applications, Plaintiff alleged a period of disability which began on May 20, 2003. [Tr. 13]. After her applications were denied initially and also denied upon reconsideration, Plaintiff requested a hearing. On May 22, 2007, a hearing was held before ALJ George L. Evans, III, to review the determination of Plaintiff's claim. [Tr. 226-50]. On June 14, 2007, the ALJ found that Plaintiff was not under a disability from May 20, 2003,

through the date of the decision. [Tr. 13-19]. On June 2, 2009, the Appeals Council denied Plaintiff's request for review; thus, the decision of the ALJ became the final decision of the Commissioner. [Tr. 4-6]. Plaintiff now seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## I.    ALJ FINDINGS

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2007.

2. The claimant has not engaged in substantial gainful activity since May 20, 2003, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3. The claimant has the following severe impairments: status-post uterine prolapse requiring hysterectomy and uterine prolapse repair surgery, urinary incontinence, mild degenerative changes in the lumbar spine, headaches, complaints of leg pain, and complaints of stomach pain (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and carry up to 20 pounds occasionally or 10 pounds frequently and sit, stand, or walk for about 6 hours each out of an 8 hour day. The claimant cannot perform more than occasional climbing, balancing, stooping, kneeling, crouching, or crawling. She must be allowed frequent restroom breaks.

6. The claimant is capable of performing past relevant work as a housekeeper. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, from May 20, 2003, through the date of this decision (20 CFR 404.1520(f) and

416.920(f)).

[Tr. 15-19].

## II.   DISABILITY ELIGIBILITY

An individual is eligible for DIB if he is insured for DIB, has not attained retirement age, has filed an application for DIB, and is under a disability. 42 U.S.C. § 423(a)(1). An individual is eligible for SSI if he has financial need and he is aged, blind, or under a disability. See 42 U.S.C. § 1382(a). "Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). An individual shall be determined to be under a disability only if his physical and/or mental impairments are of such severity that he is not only unable to do his previous work, but also cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

Whether a DIB or SSI claimant is under a disability is evaluated by the Commissioner pursuant to a sequential five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a

> continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520); 20 C.F.R. § 416.920.

A claimant bears the burden of proof at the first four steps. Id. The burden of proof shifts to the Commissioner at step five. Id. At step five, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

### III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Rogers

v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007); Richardson v. Perales, 402 U.S. 389, 401 (1971) (citing Consol. Edison v. NLRB, 305 U.S. 197, 229 (1938)). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." Walters, 127 F.3d at 528.

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings[1] promulgated by the Commissioner. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004) ("Although substantial evidence otherwise supports the decision of the Commissioner in this case, reversal is required because the agency failed to follow its own procedural regulation, and the regulation was intended to protect applicants like [plaintiff]."); id. at 546 ("The general administrative law rule, after all, is for a reviewing court, in addition to whatever substantive factual or legal review is appropriate, to 'set aside agency action...found to be...without observance of procedure required by law.'") (quoting 5 U.S.C. §

---

[1] See Blakley, 581 F.3d at 406 n.1 ("Although Social Security Rulings do not have the same force and effect as statutes or regulations, '[t]hey are binding on all components of the Social Security Administration' and 'represent precedent final opinions and orders and statements of policy' upon which we rely in adjudicating cases.") (quoting 20 C.F.R. § 402.35(b)).

5

706(2)(d) (2001)); cf. Rogers, 486 F.3d at 243 (holding that an ALJ's failure to follow a regulatory procedural requirement actually "denotes a lack of substantial evidence, even when the conclusion of the ALJ may be justified based upon the record"). "It is an elemental principal of administrative law that agencies are bound to follow their own regulations," and the Court therefore "cannot excuse the denial of a mandatory procedural protection . . . simply because there is sufficient evidence in the record" to support the Commissioner's ultimate disability determination. Wilson, 378 F.3d at 545-46. The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless.

An ALJ's violation of the Social Security Administration's procedural rules is harmless and will not result in reversible error "absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses." Wilson, 378 F.3d at 546-47. Thus, an ALJ's procedural error is harmless if his ultimate decision was supported by substantial evidence *and* the error did not deprive the claimant of an important benefit or safeguard. See id. at 547 (holding that an ALJ's violation of the rules for evaluating the opinion of a treating medical source outlined in 20 C.F.R. § 404.1527(d) was a deprivation of an "important procedural safeguard" and therefore not a harmless error). If a procedural error is not harmless, then it warrants reversing and remanding the Commissioner's disability determination. Blakley, 581 F.3d at 409 (stating that a procedural error, notwithstanding the existence of substantial evidence to support the ALJ's ultimate decision, requires that a reviewing court "reverse and remand unless the error is a harmless *de minimis* procedural violation").

On review, Plaintiff bears the burden of proving her entitlement to benefits. Boyes v. Sec'y. of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d

6

1230 (6th Cir. 1971)).

## IV. ANALYSIS

Plaintiff raises three allegations of error on appeal:

(A) The ALJ erred by failing to adequately specify his finding that Plaintiff required "frequent restroom breaks," [Doc. 10 at 5] (quoting [Tr. 16]);

(B) The ALJ erred by failing to obtain the testimony of a vocational expert regarding how Plaintiff's need for frequent restroom breaks affected her ability to work, [Doc. 10 at 8-10]; and

(C) The ALJ improperly evaluated Plaintiff's credibility, [Doc. 10 at 10-15].

Plaintiff asserts that these three errors led the ALJ to determine that she was capable of performing her past relevant work as a housekeeper. Plaintiff contends that this determination was incorrect and unsupported by the record. She argues that this case should be remanded to the Commissioner so that he can consider additional evidence regarding how her need for frequent restroom breaks "affect[s] her ability to sustain full-time work." [Doc. 10 at 16]. Plaintiff also argues that remand is necessary so that the Commissioner can properly evaluate her credibility. [Doc. 10 at 16].

The Court addresses Plaintiff's allegations of error, and the Commissioner's response to each, in turn.

### A. The ALJ's finding that Plaintiff required "frequent restroom breaks" was insufficient.

Plaintiff contends that "[t]he scope of the ALJ's finding regarding [her] need for 'frequent restroom breaks' is vague and ambiguous." [Doc. 10 at 5] (quoting [Tr. 16]). Plaintiff asserts that the ALJ failed to make "specific findings inherent to" a need for frequent restroom breaks. [Doc. 10 at 5]; [Doc. 10 at 7] ("At no time does the ALJ make specific findings concerning the frequency

7

of those restroom breaks or how long such anticipated breaks are expected to last."). Plaintiff argues that this failure made it impossible for the ALJ to properly determine whether her incontinence "preclude[d] her from performing her past employment." [Doc. 10 at 7]. Accordingly, Plaintiff concludes that this case should be remanded for further proceedings to reach a more precise and useful statement of the limiting effects of her incontinence. [Doc. 10 at 7, 16].

In response, the Commissioner simply contends that the ALJ's finding that Plaintiff "must be allowed frequent restroom breaks," [Tr. 16], was reasonable "given the dearth of evidence" that Plaintiff's urinary incontinence caused her any serious functional limitations. [Doc. 18 at 13]. The Commissioner asserts that Plaintiff did not undergo any treatment or care for incontinence following her January 2003 surgery. [Doc. 18 at 12]. The Commissioner also points out that although Plaintiff "thoroughly discussed her various medical problems and made a list of at least four medical concerns" with her most recent treating physician, Dr. Staci Stalcup, M.D., "urinary frequency or urinary incontinence did not make the list." [Doc. 18 at 13] (citing [Tr. 197-98]).

The Court finds that the Commissioner's response is a non sequitur. Plaintiff essentially argues that the ALJ's statement of her residual functional capacity ("RFC") was so indefinite that it could not be usefully relied upon at the next step of the disability determination process, i.e. making a finding about whether Plaintiff's RFC allowed her to perform her past relevant work. See Walters, 127 F.3d at 529 (6th Cir. 1997); 20 C.F.R. § 404.1520. To respond by attempting to explain *why* the ALJ's statement of Plaintiff's RFC was indefinite is to miss the point.[2] If, as the Commissioner asserts, the ALJ was not convinced that Plaintiff's incontinence seriously impacted

---

[2] The Commissioner does not argue that the ALJ's finding that Plaintiff "must be allowed frequent restroom breaks" is in fact a definite, useful statement of one of Plaintiff's work-related limitations.

8

her ability to work, then he should have stated as much in his RFC conclusion.

The Court agrees with Plaintiff that the ALJ's statement of the limiting effects of her incontinence was so imprecise that it was practically useless. The ALJ found that Plaintiff's urinary incontinence was a severe impairment, [Tr. 15], that limited her work-related functionality because it caused her to need "frequent restroom breaks," [Tr. 16]. The ALJ provided no explanation of how often or for how long Plaintiff needed to visit the restroom over the course of a workday. These facts were clearly important to the ALJ's subsequent determination of whether Plaintiff's need for restroom breaks precluded her from performing certain jobs. If Plaintiff requires two restroom breaks of ten minutes every hour, there may be no jobs that she can perform. But if Plaintiff requires only one restroom break of five minutes every hour, perhaps she could perform some jobs. The Court is careful to note that it is only speculating to make the point that how often and for how long Plaintiff needs to use the restroom are important facts that should have been found by the ALJ.

At least one other court has expressly recognized that when a social security claimant has an impairment that requires her to have "ready access to a bathroom" and the freedom to use it "as needed," an ALJ should "make a specific finding concerning the frequency and duration of [the claimant]'s bathroom usage" as part of the statement of the claimant's RFC. Brueggen v. Comm'r of Soc. Sec., 2006 U.S. Dist. LEXIS 92291, at *6 (W.D. Wis. 2006). This specific finding is necessary so that the RFC statement can be relied upon when determining at the next step of the disability determination process if the claimant can perform her past relevant work. See id. (stating that whether a claimant is able to work should be determined "in light of" the specific finding about the frequency and duration of her required bathroom breaks); 20 C.F.R. § 416.945(a)(1) (a claimant's RFC is defined as "the most [the claimant] can still do despite [her] limitations").

Accordingly, the Court finds that the ALJ's failure to specify precisely how Plaintiff's need

9

for frequent restroom breaks impacted her ability to work was an error that requires remanding this case. The ALJ's statement that Plaintiff "must be allowed frequent restroom breaks," [Tr. 16], simply does not convey the degree to which Plaintiff's ability to work was limited.

### B. The ALJ's failure to obtain vocational expert testimony cannot be characterized as error.

Plaintiff contends that "[t]he ALJ erred by failing to obtain testimony of a vocational expert in regard to: (a) the number of breaks that a typical employer will generally allow; (b) whether the need for 'frequent restroom breaks' would require [Plaintiff] to exceed normal work tolerances; [and] (c) whether the need for 'frequent restroom breaks' would preclude [Plaintiff] from performing her past work as a housekeeper." [Doc. 10 at 8]. Plaintiff argues that because the ALJ did not hear from a vocational expert, he did not have substantial evidence on which to base his finding that "[n]othing in the housekeeper job description would prevent the claimant from having restroom breaks as needed," [Tr. 18]. Plaintiff argues that the ALJ could not properly make this finding without (1) having previously made specific findings concerning the frequency and duration of needed bathroom breaks, and (2) hearing evidence about the degree to which bathroom breaks at a specified frequency for a specified duration interfere with a job as a housekeeper.

In response, the Commissioner simply asserts that "there is no requirement that vocational expert testimony be used at step four[, i.e., determining whether a claimant's RFC allows her to perform her past relevant work]." [Doc. 18 at 11] (citing Clarification of Use of Vocational Experts and Other Sources at Step 4 of the Sequential Evaluation Process, 68 Fed. Reg. 51153, 51160 (Aug. 26, 2003) (response to public comments) ("VE testimony is not required at step 4, but VE evidence may be obtained at step 4 to help us determine whether or not an individual can do his or her past

relevant work")).

The Court finds that the Commissioner has correctly stated the law. Accordingly, the ALJ's failure to obtain vocational expert testimony cannot be characterized as *per se* error. When determining whether a claimant's RFC allows him to perform his past relevant work, an ALJ may obtain evidence about the requirements of that work from many sources. The ALJ may ask the claimant about the requirements of his previous job, and he may "ask other people who know about [the claimant's] work." 20 C.F.R. §§ 404.1560(b)(2); 416.960(b)(2). The ALJ also "may use the services of vocational experts or vocational specialists, or other resources, such as the 'Dictionary of Occupational Titles' and its companion volumes and supplements, published by the Department of Labor, to obtain evidence [he] need[s] to help [him] determine whether [the claimant] can do [his] past relevant work, given [his] residual functional capacity." Id. Importantly, however, an ALJ is not *required* to obtain vocational expert testimony. Clarification of Use of Vocational Experts, 68 Fed. Reg. at 51160.

In this case, the Court agrees with Plaintiff that a "vocational expert could have testified to the typical duties specific to a housekeeper position and whether [Plaintiff]'s need for 'frequent restroom breaks'–a non-exertional limitation–would have prevented her from returning to her past work." [Doc. 10 at 9]. But the ALJ's failure to obtain vocational expert testimony is not reversible error. As stated above, an ALJ may rely on other evidence of what a job requires. In this case, the ALJ found that Plaintiff had the RFC to perform her past relevant work as a housekeeper. [Tr. 18]. To determine the requirements of Plaintiff's job as a housekeeper, the ALJ appropriately relied upon the Dictionary of Occupational Titles ("DOT"). See 20 C.F.R. §§ 404.1560(b)(2); 416.960(b)(2) (stating that the DOT is an appropriate resource). The ALJ stated that "[a]ccording to the Dictionary of Occupational Titles . . . [Plaintiff]'s past work as a housekeeper consisted of light exertion, semi-

skilled work." [Tr. 18]. Although the ALJ did not provide a pinpoint citation to the DOT to support his statement, the Court finds that the statement was reasonable and supported by substantial evidence in the record.[3] At her hearing, Plaintiff described her housekeeping work as "cleaning cabins." [Tr. 234]. On her Work History Report [Tr. 91-94], Plaintiff stated that she had worked as a "maid" at Highland Motor Inn and Eagle Ridge cabins. Plaintiff's July 11, 2005 Vocational Assessment [Tr. 128] states that she has experience as a "cleaner, housekeeping (any)," and

---

[3] Plaintiff weakly argues that the ALJ's decision regarding what her past relevant work required was "ambiguous at best." [Doc. 10 at 10]. Plaintiff argues as follows:

> While there is no pinpoint citation to the DOT in regard to this finding, there is also no housekeeper or cleaning position within the DOT which requires "light exertion, semi-skilled work." While it is more likely than not that the ALJ relied on the Vocational Assessment–classifying Ms. Green's work as a "Cleaner, Housekeeping (any)," which is unskilled and requires light work, [Tr. 128-29]–and then made a harmless error when drafting the decision, without a direct citation to the DOT or Vocational Assessment, the ALJ's decision is ambiguous at best. Moreover, the ALJ's decision classifies Ms. Green's past work as DOT 323.687-014, which refers to a cleaner and/or housekeeper in "any industry." [Tr. 128-29]. Had a vocational expert been present at the hearing and testified to such, an opportunity for cross-examination to determine why this classification was chosen–as opposed to housecleaner (hotel & rest.), DOT 323.687-018, which accurately pinpoints the locations and reflects the physical exertion described by Ms. Green in her work history report. [Tr. 91-98].

[Doc. 10 at 9-10].

The Court finds this argument to be frivolous. The relevant issue in this case is whether Plaintiff's need for restroom breaks precludes her from performing her past relevant work. Plaintiff has not explained how an employer's tolerance for frequent restroom breaks differs based on whether an employee is performing a job that fits within DOT definition 323.687-014 or one that fits within DOT definition 323.687-018. Plaintiff has not challenged the ALJ's statement of her exertional limitations or her occupational skill level. Accordingly, whether DOT definition 323.687-014 or 323.687-018 better describes the exertional and skill requirements of Plaintiff's past employment is inapposite.

12

describes this employment as falling within definition 323.687-014 in the DOT. Accordingly, the ALJ's decision to rely on the DOT for evidence of the requirements of Plaintiff's past employment as a housekeeper was reasonable and supported by substantial evidence.

Although the ALJ's failure to obtain vocational expert testimony was not error *per se*, the Court finds that his failure to discuss *any* evidence regarding how a need for frequent restroom breaks would impact an individual's ability to perform a housekeeper job requires remanding this case. Nothing in the record or the DOT indicates that an individual is able to perform a housekeeper job no matter how frequently and for how long she needs bathroom breaks. In fact, nothing in the record or DOT provides any information about employer tolerance for breaks of any kind from housekeeping work. It was therefore improper for the ALJ to simply state that "[n]othing in the housekeeper job description would prevent the claimant from having restroom breaks as needed," [Tr. 18]. The ALJ did not explain his reasoning at all, and he pointed to no evidence that housekeepers are free to use the restroom "as needed." The Court therefore finds that the ALJ's conclusion was not supported by substantial evidence.

**C. On remand, the ALJ must explain whether he found Plaintiff's statements and self-reports concerning the severity and functionally limiting effects of her urinary incontinence to be credible.**

Plaintiff contends that the ALJ improperly evaluated her credibility. [Doc. 10 at 10-15]. The ALJ stated as follows: "The claimant's overall credibility is eroded by her repeated claims to treating and examining physicians in the record that she had a lumbar disc fusion surgery. The medical evidence of record does not substantiate this claim." [Tr. 18]. The Court finds that it is not clear from the ALJ's statement whether he discounted the credibility of *all* of Plaintiff's statements and self-reports in the record, or just those statements and self-reports concerning her back problems. The Court has already recommended, *supra*, that this case be remanded to the ALJ for a proper determination of (1) the precise limitations caused by Plaintiff's urinary incontinence, and (2) whether those limitations preclude Plaintiff from performing her past relevant work. When determining the precise limitations caused by Plaintiff's incontinence on remand, the ALJ must properly explain his consideration of Plaintiff's statements and self-reports, and whether he finds them to be credible.

## V. CONCLUSION

For the foregoing reasons, it is hereby **RECOMMENDED**[4] the Commissioner's Motion for Summary Judgment **[Doc. 17]** be **DENIED**, and that Plaintiff's Motion For Judgment on the Pleadings **[Doc. 9]** be **GRANTED** to the extent that it requests that this case be remanded to the Commissioner pursuant to 42 U.S.C. § 1383(c)(3) and sentence four of 42 U.S.C. § 405(g) for a new hearing consistent with this report.

Respectfully submitted,

ENTER:

s/ C. Clifford Shirley, Jr.
United States Magistrate Judge

---

[4]Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Fed'n of Teachers, 829 F.2d 1370 (6th Cir. 1987).